CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED

09/28/2018

JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Harrisonburg Division

| | | |
|---|---|---|
| TERRI D. | ) | |
| Plaintiff, | ) | Civil Action No. 5:17-cv-00011 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of | ) | By:  Joel C. Hoppe |
| Social Security, | ) | United States Magistrate Judge |
| Defendant. | ) | |

Plaintiff Terri D. asks this Court to review the Acting Commissioner of Social Security's ("Commissioner") final decision denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434, 1381–1383f. The case is before me by the parties' consent under 28 U.S.C. § 636(c). ECF No. 6. Having considered the administrative record, the parties' briefs and oral arguments, and the applicable law, I cannot find that substantial evidence supports the Commissioner's final decision. Accordingly, the decision must be reversed and the case remanded under the fourth sentence of 42 U.S.C. § 405(g).

### I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, a court reviewing the merits of the Commissioner's final decision asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether

1

substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 98–100 (1991)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *accord* 20 C.F.R. §§ 404.1505(a), 416.905(a). Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe impairment that satisfies the Act's duration requirement; (3) has an impairment that meets or equals an impairment listed in the Act's

regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Procedural History

Terri D. filed for DIB and SSI on July 28, 2011, based on a head injury, concussion, migraine, dizziness, nausea, irritability, anxiety, mood swings, short term memory loss, right ankle weakness, and right hip displacement. Administrative Record ("R.") 152–53, 178, 348, 350, ECF No. 10. Disability Determination Services ("DDS"), the state agency, denied the applications initially in October 2011, R. 152–64, 165–77, and upon reconsideration in March 2012, R.178–90, 191–202. On November 5, 2013, Terri D. appeared with counsel at an administrative hearing before ALJ Anthony Johnson Jr., where she testified about her medical conditions and alleged functional limitations. R. 97–150. During the hearing, Terri D.'s attorney amended her alleged disability onset date from April 22, 2011, to May 14, 2013, the day prior to her fiftieth birthday. R. 110–11. ALJ Johnson also heard actual or proffered testimony from Cheryl Hartenburger and Mark Pugliese, the claimant's neighbor and boyfriend, respectively, R. 131–38, and a vocational expert ("VE"), R. 139–49.

ALJ Johnson issued an unfavorable decision on January 10, 2014. *See* R. 206–17. On March 3, 2015, the Appeals Council granted Terri D.'s request for review and vacated ALJ Johnson's decision. R. 223–24. The Appeals Council remanded the case to ALJ Johnson for further consideration of (1) medical opinions expressed by certain state agency medical

consultants and (2) testimony or other evidence given by two lay witnesses. R. 223. The Appeals Council also directed the ALJ to obtain updated medical information about Terri D., further consider her RFC in light of the medical opinions, and obtain supplemental testimony from a vocational expert. R. 223–24.

On July 2, 2015, Terri D. appeared with counsel for a second administrative hearing before ALJ Johnson where she again testified as to her medical conditions and alleged functional limitations. *See* R. 41–95. A VE also testified at this hearing. R. 84–94.

On August 24, 2015, ALJ Johnson again issued an unfavorable decision. *See* R. 20–33. Though the ALJ found that Terri D.'s muscle spasms, degenerative joint disease with history of ankle fracture, cognitive disorder, history of traumatic brain injury, affective disorder, anxiety disorder, and osteoarthritis were "severe impairments" as defined by the regulations, he found that her nose bleed, history of dog bites, hypertension, headaches, peripheral neuropathy, gastroesophageal reflux disease, plantar fasciitis, anemia, sinusitis, degenerative disc disease, and history of rib fracture were non-severe. R. 23. None of the severe impairments met or medically equaled a listed impairment. R. 23–24. ALJ Johnson further found that Terri D. retained the residual functional capacity ("RFC") to perform "light work"[1] as defined in the regulations, with some additional limitations. *See* R. 25. Based on his RFC finding and the VE's testimony, ALJ Johnson concluded that Terri D. was not disabled during the relevant period because she could still perform certain light, unskilled occupations that existed in significant numbers in the national economy. R. 31; *see* R 85–88. The Appeals Council denied her request for review, R. 1–4, and this appeal followed.

---

[1] Light work involves lifting no more than twenty pounds at a time, but frequently lifting objects weighing ten pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). A person who can meet these lifting requirements can perform light work only if he or she also can "do a good deal of walking or standing, or do some pushing and pulling of arm or leg controls while sitting." *Hays v. Sullivan*, 907 F.2d 1453, 1455 n.1 (4th Cir. 1990).

III. Discussion

On appeal, Terri D. challenges ALJ Johnson's disability determination on four separate grounds. *See generally* Pl.'s Br. 15–21, ECF No. 16. First, she argues that the ALJ erred at step two by finding that her chronic headaches, sinusitis, peripheral neuropathy, and degenerative disc disease were "not severe" impairments. *Id.* at 15–16; R. 23. Second, Terri D. argues that the ALJ committed error in the credibility analysis by improperly discounting her subjective evidence of pain. Pl.'s Br. 17. Third, Terri D. argues that the ALJ improperly found that she retained the RFC to perform unskilled light work. *Id.* at 17–19. Fourth, she argues that the ALJ should have found her disabled under the sedentary grid rules. For the reasons that follow, the Court concludes that the ALJ erred at step two and in his mental RFC assessment.

*A.      Relevant Medical Evidence*

Terri D. has a long history of several physical and mental impairments. At the age of 16, she was involved in a motor vehicle accident in which she sustained a traumatic brain injury. R. 592. Though she recovered fully, *see* R. 592, she re-injured her head on April 22, 2011, when she fell down the stairs at a motel. R. 505, 592, 639. On May 4, 2011, she went to the emergency room ("ER") at Winchester Medical Center ("WMC") where she received a CT scan of her head. R. 501–10. The scan was normal except for evidence of a right frontal soft tissue contusion. R. 510. She was diagnosed with a head contusion and concussive syndrome, but was found to be alert, oriented, and in no acute distress, R. 501–02, and she had normal speech and motor response, R. 506.

On June 2, 2011, Terri D. visited John Choi, M.D., of Winchester Neurological where she complained of persistent left-sided headaches at the location where she had hit her head. R. 586–89. She also complained of nausea, dizziness, unsteadiness, loss of energy, back

5

pain/stiffness, and changes in her sleep pattern and mood. R. 586. On exam, Dr. Choi found her to be cooperative and oriented with a normal posture, normal gait, and normal range of motion in her neck and spine. R. 588. Terri D. said that Lortab helped her headaches, R. 586, and she was prescribed a limited amount of Lortab with no refills, R. 588. She was again diagnosed with a concussion. *Id.*

Later that month, Terri D. went back to the ER at WMC with complaints of worsening dizziness, along with headaches, balance issues, walking difficulties, hearing loss, and nausea/vomiting R. 490. Though she was anxious, she was again found to be alert and oriented, but also off-balance with an abnormal gait. *Id.* An MRI of her head was normal except for evidence of a mild chronic sphenoid sinus inflammation. R. 500. She was diagnosed with post-concussive syndrome. R. 491.

Terri D. made a few visits to the ER and free clinic from August to October 2011 with primary complaints of headaches and anxiety. R. 607–21, 820–22. Exam findings were normal. *See* R. 609, 820, 821, 822. She continued to be diagnosed with post-concussive syndrome and prescribed pain and anti-nausea medications. R. 610. She also reported anxiety, and she was prescribed Zoloft. R. 820–22.

On October 17, 2011, Paul M. Hill, Psy.D., evaluated Terri D. for anxiety, headaches, dizziness, forgetfulness, and irritability at the request of the state agency. R. 592–96. He observed that Terri D. was fully oriented, had intact attention and comprehension, and had intact executive function. R. 593. Test results for verbal comprehension, perceptual reasoning, processing speed, and memory were in the average to low average ranges. R. 593–95. Dr. Hill found her cognitive profile to be "somewhat consistent with her history of concussive syndrome." R. 595. He further found that she met the criteria for a cognitive disorder with

irritability and anxiety and that her "difficulties with working memory in particular [were] a liability for efficient performance." *Id.* In terms of her degree of impairment, Dr. Hill opined that her ability to attend work regularly was mildly impaired; her ability to interact with supervisors, co-workers, and the public was mildly to moderately impaired; her abilities to perform complex tasks, perform consistently, perform without interruptions from symptoms, and manage routine stressors were all moderately impaired; and her ability to perform simple and/or repetitive tasks was intact. *Id.* Furthermore, he noted that the greatest reduction in cognitive symptoms usually occurs within six months of a head injury, but that Terri D. "continue[d] to exhibit some cognitive difficulty" past this timeframe. *Id.*

From October 2011 to early March 2012, Terri D. made several visits to the Free Medical Clinic of Northern Shenandoah Valley with complaints of on-and-off sinusitis, headaches, attention deficit hyperactivity disorder, and anxiety. R. 627–32. She typically appeared anxious and was continued on Zoloft. *See id.* In late March, Terri D. injured her right ankle in a fall, but an X-ray showed no fracture. R. 598–605, 864. Treatment records noted "ETOH," which is short for ethanol, in explaining the cause of her fall and her mental status. R. 599, 602–03. She continued to complain to various providers about right ankle pain through early June 2012. *See, e.g.*, R. 673, 654, 839. Terri D. reported that the screws in her right ankle, which had been put in place after an ankle fracture in 1992, caused pain and interfered with wearing shoes. R. 654, 673. The screws were palpable along the fibula and medial malleolus, and X-rays showed a well-healed fracture held in place by hardware. R. 654. On June 7, 2012, the screws were surgically removed, and Terri D. was deemed stable. *See* R. 646–83.

In late August 2012, Terri D. visited WMC by referral from the free medical clinic with complaints of chronic headaches and sinusitis pain. R. 744–45. A CT scan showed a normal

brain, but also revealed findings consistent with chronic right-sided sphenoid sinusitis, R. 745. She was thereafter referred to Shenandoah Head and Neck where she was assessed as having chronic sphenoidal sinusitis, headache, tinnitus, and temporomandibular joint disorders. R. 885–88.

In December 2012, Terri D. established care with Jonathan Iaccarino, M.D., at the University of Virginia Medical Center where she complained of anxiety, headaches, and back pain. She reported lower extremity numbness and tingling while sitting for prolonged periods, along with pain in her neck and back radiating down to her legs. R. 900–04. On examination, Dr. Iaccarino noted that she was alert and oriented, but had a depressed mood. R. 903. Additionally, she had normal strength and reflexes and no nerve or sensory deficit. *Id*. Dr. Iaccarino opined that although the cause of her chronic daily headaches was unclear, they may be related to her post-concussion syndrome. R. 904. He also noted, however, that depression could be a contributing cause. *Id*. For headaches, Dr. Iaccarino suggested that Terri D. take nortriptyline at night and reduce her caffeine intake. *Id*. He prescribed Cymbalta for her depression and back pain. *Id*. On January 30, 2013, Terri D. told Dr. Iaccarino that headaches had significantly improved to where she had only two or three a week and they were less severe. Her depression and anxiety had significantly improved as well. R. 898. She still experienced back pain, but her muscle spasms had improved. *Id*. Citing Terri D.'s improved symptoms, Dr. Iaccarino increased nortriptyline for her headaches and neuropathic pain and continued her on Cymbalta for depression. R. 899.

In March 2013, Terri D. again visited the free clinic where she was diagnosed with peripheral neuropathy. R. 844. She had normal gait and normal sensation and strength in her upper and lower extremities. *Id*. She followed up with WMC later that month complaining of

lumbar pain and numbness in her legs and feet, but imaging of her lumbar spine showed only "minimal degenerative changes." R. 761. In September of that year, however, she continued to complain to the clinic about spinal issues, including muscle spasms in her neck, shoulders, and back. R. 879. She made routine visits to the clinic well into 2014 primarily for back issues and anxiety. *See* R. 957–65. Two records during this period noted that she took allergy medication as needed for sinusitis and that this condition was not bothering her. *See* R. 960, 962.

In May 2014, Terri D. began to complain to the free clinic of ongoing bilateral foot pain with her left foot being the worst. R. 959. Examination findings of her lower extremities were normal except that her heels were tender. *Id.* She was diagnosed with plantar fasciitis and counseled about exercise, icing, and using shoe inserts. *Id.* Later that month an X-ray showed a hypertrophic bone formation at the third metatarsal. R. 937–38. She thereafter began making regular visits to Foot Care Center Winchester, where she was assessed as having plantar fasciitis and neuropathy. R. 969–76. In August 2014, she received a second X-ray of her left foot, which showed osteoarthritis. R. 936–37.

In September 2014, she again complained to the free clinic about back pain, but was noted to have an adequately aligned spine, intact range of motion in her spine and extremities, normal gait, normal muscular development, and "mild" tenderness to palpation of the paraspinous muscles. R. 957. She was advised to use heat and massage and to take Flexeril as needed. A diagnosis of chronic migraine was noted, but the only information about this condition was a prescription for Maxalt. *Id.*

Finally, in May and June 2015, Terri D. followed up with various providers complaining primarily of ongoing neck and low back pain and dizziness. R. 992, 996–98. She also complained to the Virginia Brain and Spine Center of ongoing headaches and dizziness. R. 996.

She reported suffering a concussion in a fall five years earlier, but she said she got better. On examination, she had normal strength and reflexes in her upper and lower extremity, normal coordination, full range of motion with no pain in her cervical spine, negative straight leg raising tests, no tenderness or muscle spasm around her spine, normal affect, and normal cognitive function. R. 998. The examining physician requested a lumbar MRI, which showed a mild disc bulge with an associated annular disc tear. R. 1000. An MRI of her head was normal, including normal sinuses. R. 1002.

B.      *Analysis*

    1.  *Step Two Severity*

Terri D. first argues that ALJ Johnson erred at step two of the five-step analysis by concluding that her chronic headaches, sinusitis, peripheral neuropathy, and degenerative disc disease were "not severe" impairments under 20 C.F.R. §§ 404.1520(c) and 416.920(c). *See* Pl.'s Br. 15. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An "impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. An impairment or combination of impairments "is considered 'severe' if it significantly limits an individual's physical or mental abilities to do basic work activities." SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996). Conversely, a medical impairment or combination of impairments "can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on

the individual," *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984), that it does not

meaningfully disrupt his or her ability to perform basic work activities, SSR 96-3p, 1996 WL

374181, at *2. *See Felton-Miller v. Astrue*, 459 F. App'x 226, 229–30 (4th Cir. 2011) (per

curiam) (explaining that step two involves "a threshold question with a de minimis severity

requirement," but "medical conditions alone do not entitle a claimant to disability benefits;

'[t]here must be a showing of related functional loss'" (quoting *Gross v. Heckler*, 785 F.2d 1163,

1166 (4th Cir. 1986))). "Basic work activities" are the fundamental "abilities and aptitudes

necessary to do most jobs," such as sitting, standing, and walking, or responding appropriately to

other people, following simple instructions, and dealing with normal workplace situations. 20

C.F.R. §§ 404.1521(b), 416.921(b) (2015).

The determination whether a medically determinable impairment is or is not severe

"requires a careful evaluation of the medical findings that describe the impairment(s) and an

informed judgment about the limitations and restrictions the impairment(s) and related

symptom(s) impose on the individual's . . . ability to do basic work activities." SSR 96-3p, 1996

WL 374181, at *2. Even when a medical impairment is properly found to be non-severe, the ALJ

still must consider the extent, if any, to which the impairment and any related symptoms impede

the claimant's ability to perform more specific work-related functions under ordinary workplace

conditions. *See* 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p, 1996 WL 374184, at *2–3, *5 (July

2, 1996).

At step two, ALJ Johnson found that Terri D.'s impairments of chronic headaches,

sinusitis, peripheral neuropathy, and degenerative disc disease were non-severe. R. 23. ALJ

Johnson did not articulate a factual basis for this finding, but rather stated cursorily that "they

cause no more than minimal vocationally relevant limitations or have not lasted for a continuous

period of 12 months or longer." *Id.* This desultory conclusion, without more, precludes substantial evidence review because the Court is unable to ascertain the evidence upon which the ALJ relied in reaching his decision. *See Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) ("If the reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744(1985))). Moreover, although these impairments are documented in the record by a medical doctor's diagnosis and clinical observations, imaging, or both, as well as work-related functional limitations reported by a medical professional or Terri D., ALJ Johnson did not incorporate them into his RFC assessment. *See* R. 26 (suggesting that "the objective medical evidence" showed Terri D. had been diagnosed only with those medical impairments that ALJ Johnson found to be "severe" at step two).

As to Terri D.'s peripheral neuropathy and degenerative disc disease, she began to complain of spine-related issues in late 2012 and early 2013, including radiating back and neck pain and lower extremity numbness and tingling. *See* R. 897–904. Subsequent imaging taken in March of 2013 showed degenerative endplate osteophytes at several levels, but minimal degenerative changes, R. 760–61, and an MRI of her lumbar spine taken in June 2015 revealed a disc bulge with an associated annular tear, R. 1000. Also in March of 2013, Terri D. complained to one of her providers of neuropathy, particularly concerning tingling in her hand and numbness in her feet. R. 844. She reiterated a similar complaint with regard to her feet in August 2014. R. 970. During this time, she was diagnosed with neuropathy, but the more consistent diagnosis with related symptoms was plantar fasciitis, which appears to have resolved in a matter of months.

At her hearing, Terri D. testified about radiating back pain that caused significant difficulty for her while standing and walking as well as leg numbness she experienced while sitting. R. 51–54, 59–60. She further testified that she spent the majority of the day lying down. R. 64. Her physical exams, however, were generally normal during the period that she complained to providers about back pain. Those findings indicated that she was in no apparent distress, R. 784, 899, 940, 957, 959, 962, had a normal or upright posture, R. 844, 977, and normal strength or function in all major extremities, R. 844, 879.

Turning to Terri D.'s headaches, after her fall in April 2011, a CT scan of Terri D.'s head showed evidence of a soft tissue contusion, for which she was diagnosed with a contusion and concussive syndrome. R. 501–02. She thereafter began to complain of headaches beginning in June 2011, along with nausea, dizziness, unsteadiness, loss of energy, back pain/stiffness, and changes in her sleep pattern and mood. R. 586. Though an MRI of her head later that month was relatively normal, R. 500, she did continue to complain of headaches, *see, e.g.*, R. 607–21, 996. Terri D. also complained of headaches in relation to her sinusitis. Her headaches significantly improved by January 2013, however, after her medication regimen was adjusted and caffeine consumption reduced, *see* R. 898, 904, and she had nearly no complaints about headaches until June 2015, *see* R. 996. At the administrative hearing, Terri D. testified that she experienced headaches constantly and that she had a severe headache at least once each week. *See* R. 69. She further testified that her severe headaches can force her to shut her windows, turn off all sound, put a pillow on her head with an ice pack, and "pray." *Id.*

In his severity analysis, ALJ Johnson did not identify any evidence to dispute these records, nor did he otherwise substantively explain why Terri D.'s headaches, peripheral neuropathy, or degenerative disc disease were not severe. Although the record is somewhat of a

mixed bag as to the severity and on-going nature of Terri D.'s functional limitations, the ALJ was nonetheless obligated to conduct a reasoned analysis of the conflicting evidence to explain why he found certain of Terri D.'s impairments non-severe. His failure to do so is error.

The Commissioner argues that this error is harmless because the ALJ accounted for the functional limitations attributable to these impairments in his RFC assessment. Def.'s Br. 9–10, ECF No. 18; *see Kersey v. Astrue*, 614 F. Supp. 2d 679, 696 (W.D. Va. 2009) ("Errors are harmless in social security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error."). I will not weigh in on this issue, however, because the RFC is deficient for other reasons, as explained below. On remand, the ALJ must take care to address all functional limitations for every impairment identified in the medical evidence through relevant signs, symptoms, and laboratory findings.

### 2. RFC Determination

A claimant's RFC represents her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis" despite her medical impairments, including "those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *2, *5 (emphasis omitted); *see* 20 C.F.R. §§ 404.1545, 416.945. It is a factual finding "made by the Commissioner based on all the relevant evidence in the [claimant's] record," *Felton-Miller v. Astrue*, 459 F. App'x at 230–31, and it must reflect the combined functionally limiting effects of impairments that are supported by the medical evidence or the claimant's credible reports of pain or other symptoms, *see Mascio v. Colvin*, 780 F.3d 632, 638–40 (4th Cir. 2015). The ALJ's RFC assessment must "include a narrative discussion describing" how medical facts and nonmedical evidence "support[] each conclusion," *Mascio*, 780 F.3d at 636, and explaining why she discounted any "obviously probative" evidence, *Arnold v. Sec'y of Health, Educ. & Welfare*, 567

F.2d 258, 259 (4th Cir. 1977), that supported the individual's claim for disability benefits, *Ezzell v. Berryhill*, 688 F. App'x 199, 200 (4th Cir. 2017). This discussion should "build an accurate and logical bridge from the evidence to [the ALJ's] conclusion," *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)), that the claimant retains a certain ability to sustain work-related activities, *Mascio*, 780 F.3d at 636–37.

Terri D. argues that the ALJ's RFC determination does not account for all of her limitations. In particular, she argues that the RFC failed to account for her moderate limitations in performing work in a schedule, maintaining regular attendance, being punctual, and maintaining concentration, persistence, and pace as noted by Dr. Hill and the DDS medical reviewers. Pl.'s Br. 18.

In *Mascio v. Colvin*, the Court of Appeals for the Fourth Circuit clarified the ALJ's duty to explain how a step-three finding that a claimant has "moderate limitation in concentration, persistence, or pace" either does or does not "translate into a limitation in [the claimant's] residual functional capacity." 780 F.3d at 638. In that case, the ALJ found Mascio had "moderate difficulties in maintaining her concentration, persistence, or pace," but his subsequent RFC determination merely limited her to "unskilled work."[2] *Id.* And, although the ALJ's hypothetical question to the VE "said nothing about Mascio's mental limitations," he ultimately relied on the VE's testimony identifying certain "unskilled" occupations in concluding that Mascio was not disabled. *Id.* at 637–38 ("The ALJ's hypothetical, together with the [VE's] unsolicited addition of 'unskilled work,' matched the ALJ's finding regarding Mascio's residual functional capacity.").

---

[2] "'Unskilled work' is a term of art, defined by regulation as 'work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.'" *Fisher v. Barnhart*, 181 F. App'x 359, 364 n.3 (4th Cir. 2006) (per curiam) (quoting 20 C.F.R. § 404.1568(a) (2005)).

The Fourth Circuit reversed the Commissioner's decision and remanded the case for the ALJ to explain how the RFC accounted for Mascio's "moderate" difficulties maintaining concentration, persistence, or pace, or why that deficit did not translate into a limitation in her RFC—i.e., her maximum remaining *ability to sustain* work-related activities on a regular and continuing basis. *See id.* In doing so, the panel explained "that an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the [RFC and] hypothetical question to simple, routine tasks or unskilled work'" because "the ability to perform simple tasks differs from the ability to stay on task." *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). "Only the latter limitation [will] account for a claimant's limitation in concentration, persistence, or pace." *Id.*

As in *Mascio*, ALJ Johnson found at step three that Terri D. had moderate difficulties with regard to concentration, persistence, or pace. R. 24. This finding necessarily established some deficit in Terri D.'s "ability to sustain focused attention and concentration" long enough "to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(C)(3) (2015); *see Petty v. Colvin*, 204 F. Supp. 3d 196, 206 (D.D.C. 2016). Thus, ALJ Johnson's RFC assessment must either account for this deficit or adequately explain why, notwithstanding his earlier finding, Terri D.'s overall limitations actually "do not affect [her] capacity to sustain simple, routine, or unskilled work." *Perdue v. Colvin*, No. 7:14cv173, 2015 WL 5771813, at *6 (W.D. Va. Sept. 30, 2015) (citing *Mascio*, 780 F.3d at 638). He can satisfy this obligation by providing a sufficiently detailed "analysis that allows the court to ascertain why the ALJ found moderate difficulties at step three," making an RFC finding "that explicitly accounts for those difficulties," or including a sufficiently detailed explanation "that clarifies why the moderate difficulties" found at step three "do not result in any

specific limitations in the claimant's RFC." *Powell v. Comm'r, Soc. Sec. Admin.*, Civ. No. SAG-13-3223, 2015 WL 4715280, at *2 (D. Md. Aug. 6, 2015). The key is whether the reviewing court can ascertain "the rationale underlying the apparent discrepancy" between a step-three finding of moderate difficulties maintaining concentration, persistence, or pace and a subsequent RFC finding "that does not, on its face, account for such difficulties." *Id.*; *see also Sizemore v. Berryhill*, 878 F.3d 72, 81 (4th Cir. 2017) (rejecting a *Mascio*-type challenge where the ALJ's written decision provided an adequate link between his step-three findings and his mental RFC determination).

ALJ Johnson's written decision failed to satisfy this standard. At step three, the ALJ concluded that Terri D. had moderate limitation in concentration, persistence, or pace then listed many of her activities of daily living. R. 24–25. The ALJ provided no analysis for his conclusion or explanation why any of these activities demonstrated a moderate limitation.

In his RFC assessment, ALJ Johnson concluded that Terri D. could perform light work with some postural and manipulative limitations. R. 25. Additionally, he concluded that she could not be exposed to unprotected heights or moving machinery; she was limited to understanding, remembering, and carrying out simple instructions; she could focus on tasks for two hour segments; and she could have no more than occasional contact with the public, co-workers, and supervisors. *Id.* In his RFC analysis, ALJ Johnson noted that Terri D. had sustained a brain injury from a motor vehicle accident in 1979, but that she had fully recovered and had since been able to return to substantial gainful activity levels. R. 26. He also acknowledged that she had experienced a fall in 2011, which she alleged made her cognitive symptoms worse, but he also identified normal results of MRI and CT scans of her head from before and after the onset date. *Id.* ALJ Johnson also indicated that Terri D. was diagnosed with affective disorder

and anxiety disorder on January 30, 2013, but that the record showed improvements and stability with respect to her mental symptoms, including multiple instances in which she was found to be "alert and oriented." R. 27. With respect to her cognitive symptoms, ALJ Johnson concluded that although some objective medical evidence indicated that Terri D. had mental impairments, the record reflected no significant, ongoing deficit with her memory. R. 28.

ALJ Johnson grounded his RFC determination in part on the DDS medical consultants' opinions. *See* R. 30–31. As the ALJ noted, they identified Terri D.'s organic brain syndrome as a severe impairment, and they found that she retained basic brain functions such as the capacity to understand and remember instructions, locations, and procedures, and the ability to sustain an ordinary routine without special supervision. R. 29. ALJ Johnson, however, did not mention other findings by state consultants that Terri D. had "moderate limitations" in her specific abilities to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. R. 186–87, 199–200. They attributed these limitations to Terri D.'s brain injury. *Id.* ALJ Johnson found their opinions as to Terri D.'s functional limitations to be "mainly consistent with the record as a whole" and he assigned that portion of their opinions "significant, but specifically not great, weight." R. 30. He did not provide a reason for omitting their RFC finding of a moderate limitation in concentration, persistence, and pace from the portion of their opinions that he credited. This omission is particularly glaring because they attributed that limitation to Terri D.'s head injury, which the ALJ found to be a severe impairment.

The ALJ's discussion of Dr. Hill's medical opinion is also deficient. The ALJ assigned the opinion only "some weight" because it came a year and a half before the amended onset date and six months after Terri D.'s head injury. R. 30. Yet, Dr. Hill's findings and opinions were

largely consistent with those of the state agency psychologists. R. 158, 171 (noting that Dr. Hill's medical opinion was "in line with [their] assessment and supported by the evidence"). Dr. Hill diagnosed Terri D. with a cognitive disorder related to her head injury, R. 595, which again reflects the severe impairments found by the ALJ. Although the ALJ identified part of Dr. Hill's medical opinion, he again failed to mention parts of that opinion that seem to have some impact on Terri D.'s ability to stay on task, namely that she was "moderately limited" in her abilities to perform consistently and without interruptions from symptoms. R. 595. Thus, in assessing all of the medical opinions in the record, the ALJ excluded, without any explanation, the findings relevant to Terri D.'s ability to stay on task even though he found at step three that she had an overall moderate limitation in that ability. *See Bradley v. Berryhill*, No. 4:16cv26, 2017 WL 4707035, at *3 (W.D. Va. Oct. 19, 2017) ("In light of Dr. Oritt's *entire* opinion, the ALJ's error falls squarely in line with the Fourth Circuit's conclusion in <u>Mascio</u>: 'the ability to perform simple tasks differs from the ability to stay on task.'" (quoting 780 F.3d at 638)).

ALJ Johnson's failure to properly address the medical opinion evidence relating to Terri D.'s moderate limitation in staying on task renders the Court unable to ascertain the rationale for the discrepancy between his step three finding and his ultimate conclusion as to Terri D.'s mental RFC. *See Powell*, 2015 WL 4715820, at *2. It is possible ALJ Johnson thought his RFC finding that Terri D. should be "limited to focusing on work related tasks for two hours at a time before requiring a break," R. 24, accounted for his earlier finding that she had moderate difficulties maintaining concentration, persistence, or pace, R. 25. The ALJ, however, did not identify any support in the record for this conclusion that allowing customary breaks in a workday, *see* R. 89–90, would account for Terri D.'s moderate limitation in staying on task. For example, although the DDS consultants opined that Terri D. could "perform simple, routine work," R. 163, 189,

they did not say she could sustain attention or persistent in such work for any amount of time before needing a break, R. 160, 186. *See Sizemore*, 878 F.3d at 81 (remand under *Mascio* was not required where the ALJ credited medical opinions about Sizemore's ability to "show *sustained attention* to perform simple repetitive tasks" because the opinions "provided substantial support for the ALJ's finding that, despite Sizemore's overall moderate difficulties with concentration, persistence, or pace, he would nonetheless be able to *stay on task* while performing simple . . . tasks, as long as he was working in low stress non-production jobs with no public contact" (quotation marks omitted)). On the contrary, the DDS consultants opined that Terri D. was "moderately limited" in her ability "to perform at a consistent pace without an unreasonable number and length of rest periods." R. 160, 187.

In the absence of evidentiary support or a reasonable explanation of his rationale for how this RFC would accommodate the moderate limitations identified at step three, I cannot find that substantial evidence supports the decision.

## IV. Conclusion

For the foregoing reasons, I cannot find that there is substantial evidence to support the Commissioner's final decision. Accordingly, the Court will **GRANT** the Plaintiff's Motion for Summary Judgment, ECF No. 15, **DENY** the Commissioner's Motion for Summary Judgment, ECF No. 17, **REVERSE** the Commissioner's final decision, **REMAND** the matter for further proceedings under the fourth sentence of 42 U.S.C. § 405(g), and **DISMISS** this case from the Court's active docket. A separate order will enter.

The Clerk shall send certified copies of this Memorandum Opinion to all counsel of record.

ENTER: September 28, 2018

Joel C. Hoppe
United States Magistrate Judge